UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 14-cr-379 (ADM/LIB) (1) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Benjamin One Deer Hart, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge upon Defendant Benjamin One Deer Hart's ("Defendant") Motion to Suppress August 8, 2014, Statements, Admissions and Answers, [Docket No. 24]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on February 13, 2015, regarding Defendant's pretrial motions.[1]

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress August 8, 2014, Statements, Admissions and Answers, [Docket No. 24], be **DENIED**.

## I.   BACKGROUND AND STATEMENT OF FACTS

### A. Background

Defendant is charged with two counts of assault with a deadly weapon, in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153(a); and one count of assault resulting in serious injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a). (Indictment [Docket No. 1]).

---

[1]The Court addressed the Defendant's pretrial discovery motions by separate order.

B.  Facts[2]

The record presently before the Court indicates that, on August 8, 2014, Red Lake Police Department Criminal Investigator Paul Smith ("CI Smith") and other officers arrested Defendant in relation to an incident that had occurred on July 10, 2014. The arrest occurred at the Seven Clans Casino, which is inside the external boundaries of the Red Lake Indian Reservation. After being arrested, Defendant was transported to the Red Lake Detention Center, where he was interviewed by CI Smith and Federal Bureau of Investigation Special Agent Jonathan Tjernagel ("SA Tjernagel").

The officers interviewed Defendant in the interview room of the Red Lake Detention Center. CI Smith and SA Tjernagel were dressed in casual clothing during the interview. CI Smith was not armed. At no time did the officers make threats or promises to Defendant to get him to answer their questions.

The officers recorded the interview. SA Tjernagel began the interview by reading Defendant the Miranda warnings. (See, Id. at 00:25-00:55). Defendant was then provided with a Federal Bureau of Investigation Advice of Rights form. (Government's Ex. 2).  Defendant signed the portion of the form indicating that he had read the Miranda warnings listed on the form, had understood them, and was willing to answer questions without a lawyer present. (See, Id.).

During the interview, Defendant made a series of statements admitting that there was animosity between Defendant and individuals who were stabbed on July 10, 2014, but denying that he had attacked anyone that day. (See Gen., Government Ex. 1).  After Defendant described his version of the events of July 10, 2014, the officers terminated the interview.  (See, Id. at 9:10-9:23).  The interview lasted slightly longer than nine (9) minutes. (See Gen., Id.).

---

[2]Except where expressly indicated otherwise, the facts are derived from the testimony of Red Lake Police Department Criminal Investigator Paul Smith at the February 13, 2015, motions hearing.

Defendant appeared to CI Smith during the interview to be a tired and standoffish physically healthy adult. Defendant did not appear to be under the influence of intoxicants or to have any trouble communicating with the officers. Defendant even corrected what he thought were SA Tjernagel's mischaracterizations of his answers regarding a timeline of the events leading to July 10, 2014. (See, Government's Ex. 1 at 5:47-6:16).

Defendant was later indicted with the charges now against him. (Indictment [Docket No. 1]). Defendant then filed the motion to suppress the statements he made while being interviewed by SA Tjernagel and CI Smith on August 8, 2014, presently before the Court. [Docket No. 24].

## II. DEFENDANT'S MOTION TO SUPPRESS AUGUST 8, 2014, STATEMENTS, ADMISSIONS AND ANSWERS [DOCKET NO. 24].

As initially drafted, Defendant's motion to suppress generically asked the Court for an order suppressing "all statements, admissions and answers made by the defendant prior to, at the time of, or subsequent to his arrest" on August 8, 2014. (See, Def.'s Motion to Suppress, [Docket No. 24], 1). The evidence submitted at the motions hearing, however, indicated that the only statements Defendant made on August 8, 2014, were those in response to the questions being asked during the interview at the Red Lake Detention Center. On the record at the motions hearing, counsel for Defendant orally clarified that Defendant was asking the Court only to review the adequacy of the Miranda warning provided to him at the beginning of the interview and the voluntariness of the statements he made during the interview. (Motions Hearing, February 13, 2015, Digital Recording at 10:55:30-10:56:05).

### A. Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United

3

States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). "Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005) (quoting Rhode Island v. Innis, 446 U.S. 291, 300–01(1980)).

A defendant may waive the Miranda rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.

**B. Analysis**

It is undisputed that Defendant was in custody during the August 8, 2014, interview and that SA Tjernagel and CI Smith's express questioning of Defendant during that interview constituted interrogation. It is also undisputed that SA Tjernagel read Defendant a Miranda warning at the beginning of the interview, and that Defendant waived his Miranda rights both in writing and by answering the questions put to him during the interview. Defendant now asks the Court to review the adequacy of the Miranda warning he received from SA Tjernagel and the voluntariness of his statements.

With regard to the adequacy of provided Miranda warnings, the U.S. Supreme Court has explained:

> The four warnings Miranda requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed. See California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam) ("This Court has never indicated that the rigidity of Miranda extends to the

> precise formulation of the warnings given a criminal defendant." (internal quotation marks omitted)); Rhode Island v. Innis, 446 U.S. 291, 297, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (safeguards against self-incrimination include "Miranda warnings ... or their equivalent"). In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed "as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by Miranda.'" Duckworth[ v. Eagan, 492 U.S. 195, 201 (1989)] (quoting Prysock, 453 U.S., at 361, 101 S.Ct. 2806).

Florida v. Powell, 559 U.S. 50, 60 (2010).

Miranda requires that a suspect subject to custodial interrogation must be advised prior to any questioning that:

> [1] he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Miranda, 384 U.S. at 479.

In addition, in Duckworth, the U.S. Supreme clarified that the right to the presence of attorney referred to in Miranda requires that the suspect be informed "that he has the right to an attorney before and during questioning[.]" Id., 492 U.S. at 204.

The FBI Advice of Rights form signed by Defendant informs the suspect to whom the form is provided (1) that the suspect has "the right to remain silent"; (2) that anything the suspect says "can be used against [the suspect] in court"; (3) that the suspect has the right to talk to a lawyer for advice before being asked any questions; (4) that the suspect has the right to have a lawyer with him during questioning; (5) that if the suspect cannot afford an attorney one will be appointed for the suspect before any questioning if the suspect wishes; and (6) if the suspect decides to answer questions without a lawyer present, the suspect has the right to stop answering at any time. (Government's Ex. 2).

There is no significant difference between the phrasing of the Miranda warnings in the FBI Advice of Rights form and the phrasing of the warnings as articulated in Miranda and clarified in Duckworth. Thus, the phrasing in the FBI Advice of Rights form reasonably conveyed to Defendant the warnings prescribed by Miranda.

Defendant next asks the Court review the voluntariness of the statements he made during the interview. Whether statements made during a custodial interrogation must be suppressed is determined by inquiring into the totality of the circumstances "to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel." Fare v. Michael C., 442 U.S. 707, 724-25 (1979) (citing Miranda, 384 U.S. at 475–477).

The record before the Court indicates that SA Tjernagel read Defendant the Miranda warnings and asked Defendant whether he understood them. Defendant was also provided with and signed the FBI Advice of Rights form indicating that he had read the Miranda warnings contained in that form, understood them, and agreed to talk with the interviewing officers without an attorney present. In addition, the testimony of CI Smith and the Court's review of the recording of the interview indicate that Defendant voluntarily and knowingly agreed to speak with law enforcement and there is nothing in the present record to detract from that conclusion.

Further, the present record indicates that SA Tjernagel and CI Smith at no time attempted to inappropriately coerce Defendant into answering their questions, a "necessary predicate" to finding that a Miranda waiver or subsequent statement has not been voluntarily given. See Colorado v. Connelly, 479 U.S. 157, 167 (1986).

Upon considering the totality of the circumstances, the Court concludes that Defendant, after being advised of his Miranda rights, did knowingly, voluntarily, and intelligently waive

those rights and voluntarily answered the officers' questions throughout the interview. Accordingly, the Court recommends **DENYING** Defendant's Motion to Suppress August 8, 2014, Statements, Admissions and Answers, [Docket No. 24].

**III. CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress August 8, 2014, Statements, Admissions and Answers, [Docket No. 24], be **DENIED.**

Dated: February 19, 2015

s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 5, 2015** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by March 19, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.

